IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00834-CMA-NYW

ARLUS DANIEL, JR,

     Plaintiff,

v.

SARGENT STEINER,
SARGENT VALDEZ,
CORRECTIONAL OFFICER HARTLEY,
CASE MANAGER RICK BURFORD,
CASE MANAGER THOMPSON,
CASE MANAGER HARTBAUER,
SARGENT DAVE GACNIK,
LIEUTENANT KEVIN HALL,
LIEUTENANT TERRY SCAVARDA,
LIEUTENANT MASON,
LIEUTENANT RICHARDS,
MAJOR TERRY HAMILTON,
WARDEN PAMELA PLOUGH,
EXECUTIVE DIRECTOR CLEMENTS,
EXECUTIVE DIRECTOR RICK RAEMISCH,
PAROLE OFFICER JANET RUSSELL,
GOVERNOR JOHN HICKENLOOPER,

     Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendants Steiner, Valdez, Hartley, Burford, Thompson, Hartbauer, Gacnik, Hall, Scavarda, Richards, Hamilton, Plough, Clements, Raemisch, Russell, and Hickenlooper's (collectively, "Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion to Dismiss").[1]  [#51, filed May 5, 2015].  The matter was referred to the undersigned Magistrate Judge pursuant to the Order Referring Case dated September 2, 2014 [#12], Order of Reassignment dated

---

[1] The Motion to Dismiss is not filed on behalf of Defendant Lieutenant Mason ("Lieutenant Mason").  As discussed in detail below, the docket reflects that Lieutenant Mason has not been served.

February 10, 2015 [#25], and memorandum dated May 6, 2015 [#52]. After carefully considering the Motion and related briefing, the entire case file, and applicable case law, I respectfully RECOMMEND that the Motion to Dismiss be GRANTED for the following reasons. In addition, I respectfully RECOMMEND that Defendant Lieutenant Mason be DISMISSED for lack of service pursuant to Fed. R. Civ. P. 4(m) and this court's prior orders.

## BACKGROUND

Mr. Arlus Daniel, Jr. ("Mr. Daniel" or "Plaintiff"), who was previously in the custody of the Colorado Department of Corrections ("CDOC"), filed a Complaint on March 21, 2014, pursuant to 42 U.S.C. § 1983 asserting violations of his First Amendment rights while incarcerated at Skyline Correctional Facility ("SCF") in Canon City, Colorado. [#1].[2] On October 22, 2014, Plaintiff filed a Proposed Second Amended Complaint against Defendants for "retaliation for attending the Four Mile Law Library" in violation of his First Amendment rights. [#22].

The following facts are taken from the Second Amended Complaint and deemed true for the purposes of this Recommendation. On November 23, 2011, Plaintiff filed a petition in the District Court of Colorado for Writ of Habeas Corpus. [#22 at 9]. On December 10, 2011, Defendant Steiner hired Plaintiff to work in the Housekeeping Department, an earned and highly sought-after position. [#22 at 9, 10]. Plaintiff initially served as a floor porter, sweeping, mopping, and buffing the area outside of the kitchen, and received positive feedback for his work from staff, including Defendant Steiner. [*Id.*] In late December or early January, the District Court of Colorado ordered Plaintiff to file

---

[2] Plaintiff was incarcerated at SCF from November 30, 2011 until April 8, 2012. [#1 at 2; #22 at 8].

2

an amended petition for writ of habeas corpus within twenty-nine days, which prompted Plaintiff to seek access to the law library at Four Mile Correction Facility ("Law Library"). [*Id.*] On January 15, 2012, Defendant Steiner altered Plaintiff's job duties to "cleaning the day hall microwaves, tables and telephones." [*Id.*] Defendant Steiner did not inform Plaintiff that the new duties also included serving as "a back-up to the bathroom/shower porters when they were called away from their duties." [*Id.*] At that time, Plaintiff had received no negative comments regarding the quality of his work. [*Id.*] Plaintiff typically completed his job between 7:00 a.m. and 7:45 a.m., six days a week. The bathroom/shower porters begin their work at 7:00 a.m. and finish at 9:00 a.m., six days a week. The same week that Defendant Steiner changed Plaintiff's job duties, he was required to fill in for a bathroom/shower porter. [#22 at 10]. Plaintiff had already arranged to visit the Law Library on that day, and the scheduled transport from SCF to Four Mile Correction Facility left at 7:45 a.m. [*Id.*] He thus left for the Law Library without completing the bathroom/shower porter duties. [*Id.*]

On March 30, 2012, Defendant Valdez ordered Plaintiff to the Housekeeping Department's office, where Defendant Steiner fired him "without warning." [#22 at 10]. That same day, Defendant Burford instructed Defendants Gacnik and Hall to "ensure that plaintiff [got] thirty days in the kitchen and thirty days on pots and pans." [*Id.* at 11]. As a result of Defendant Steiner firing him, Plaintiff suffered "assaults and threats, placement in Restricted Privileges, placement in segregated confinement, the filing of false disciplinary charges, unfavorable classification, place[ment] in unenviable work duties, actions affecting parole prospects, label[s] as a troublemaker, label[s] as a 'bad' worker, and others." [*Id.*] On April 5, 2012, Plaintiff resigned his job in the kitchen due

to a medical condition. [*Id.*] Defendants Gacnik, Hall, and Burford told Plaintiff that he could not quit his job in the kitchen and Defendant Burford "disparaged the plaintiff, threatened the plaintiff, and verbally assaulted the plaintiff." [*Id.*] Defendant Scavarda "unlawfully arrested the plaintiff," and non-party Sergeant Cook "unlawfully transported the plaintiff to MCU." [*Id.*] While in MCU, Plaintiff wrote to Defendant Warden Pamela Plough, Defendant Clements who was Executive Director of CDOC at the time, and Defendant Governor Hickenlooper regarding this treatment. [#22 at 12]. On April 13, 2012, Plaintiff was released from MCU and transferred to Four Mile Correction Facility, "a higher security facility." [*Id.*] On May 30, 2012, Plaintiff received a letter from Defendant Major Terry Hamilton written on behalf Defendant Plough "explaining the results of his investigation." [*Id.*] Plaintiff, having "never had work related problems prior to being placed at Skyline…continued to have work related problems from there on out due to his reputation as a troublemaker." [*Id.*] Finally, Defendant Parole Officer Janet Russell directed Plaintiff "to not contact Sargent Steiner, et al, in any way, shape, or form on or about the spring of 2014 with regards to [this action." [*Id.*] Mr. Daniel now seeks "financial relief as the court deems appropriate." [#22 at 13].

In an Order dated October 28, 2015, the court accepted Plaintiff's Second Amended Complaint for filing and ordered Plaintiff to file proof of service on all Defendants on or before February 25, 2015. [#23]. In that Order, the court recounted its prior warnings that failure to serve would result in a recommendation that the Complaint be dismissed. [*Id.* at 2]. The court indicated that no further extension of time would be granted to serve the Second Amended Complaint, and that failure to comply with the order may result in dismissal of the action. [*Id.* at 3]. Plaintiff failed to do so,

4

and this court subsequently issued an Order to Show Cause why this case should not be dismissed pursuant to D.C.COLO.LCivR 41.1 for lack of prosecution and failure to comply with the October 28, 2014 Order ("October 28 Order"). [#26]. On March 18, 2015, Plaintiff responded to the Order to Show Cause and requested an extension of time to serve the summons and copies of the Second Amended Complaint on Defendants. [#27]. Finding that Plaintiff had demonstrated his intention to pursue this litigation, this court discharged the Order to Show Cause pursuant to Federal Rule of Civil Procedure 4(m) and granted his request for additional time to serve Defendants up to and including April 3, 2015. [#28]. On April 6, 2015, Plaintiff filed proofs of service with respect to Defendants. *See* [#30 through #45]. The return of service on Lieutenant Mason was returned unexecuted. [#46].

Defendants filed the Motion to Dismiss on May 5, 2015 [#51], and this court issued a Minute Order instructing Plaintiff to file a Response on or before May 29, 2015 ("Minute Order"). [#53]. On May 22, 2015, Defendants filed a Motion to Stay Discovery pending resolution of their Motion to Dismiss. [#54]. On May 28, 2015, Plaintiff filed a Notice expressing concern that copies of the Proposed First Amended Complaint (which had been rejected by the court on October 9, 2014 [#20]) had been served on Defendants inadvertently, rather than copies of the Second Amended Complaint. [#58].

The court set a Scheduling Conference for May 29, 2015. [#50]. As a result of Plaintiff's failure to appear, this court converted the Scheduling Conference into a Status Conference [#59], and subsequently granted Defendants' Motion to Stay. [#60]. Plaintiff did not file a Response to the Motion to Dismiss, but the court has received no notice indicating that the Minute Order was returned as undeliverable to the address

provided by Plaintiff. Plaintiff has also not alerted the court of any new contact information.

## STANDARD OF REVIEW

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Because Mr. Daniel is appearing *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted).

## ANALYSIS

### I. Eleventh Amendment Immunity

Mr. Daniel sues Defendants in their individual and official capacities. [#22 at ¶¶ 2-10, 12-18]. As sued in their official capacity, Defendants are immune from claims for monetary damages. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72, (1985)). The Eleventh Amendment bars suits against a state by its own citizens, and generally immunizes state defendants sued in their official capacities from liability for damages or equitable relief. *See Johns v. Stuart*, 57 F.3d 1544, 1552 (10th Cir. 1995). In addition, state employees acting in their official capacities are not "persons" subject to suit under § 1983. *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994). An exception to this general bar is a suit in which a plaintiff seeks to prospectively enjoin a state official from violating federal law, *Johns*, 57 F.3d at 1552; however, Mr. Daniel does not seek any such relief in his Second

7

Amended Complaint, and it is unclear whether such demand for injunctive relief, even if made, would be cognizable given the fact that it does not appear that Mr. Daniel is currently incarcerated at SCF. [#22 at 8, 13].

Accordingly, Plaintiff cannot pursue a § 1983 claim for damages against Defendants sued in their official capacity, but may pursue damages from Defendants in their individual capacity so long as he has stated a cognizable claim for such. The court now turns to the question of whether Mr. Daniel has stated a claim against Defendants in their individual capacity under the First Amendment.

## II.     Claim for First Amendment Violation

Title 42 U.S.C. § 1983 allows an injured person to seek damages for a violation of clearly established federal statutory or constitutional rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). Plaintiff alleges that Defendant Sergeant Steiner "conspired with the other named defendants to remove [his right to access the courts] by retaliating and punishing [him] for going to the Four Mile Law Library." [#22 at 8].

### A.     Statute of Limitations

Defendants argue as an initial matter that Plaintiff's claim is time-barred because Defendant Steiner allegedly altered his job duties on January 15, 2012 in retaliation for his having filed a federal habeas corpus action the previous fall and for requesting access to the Law Library, and Plaintiff did not file this lawsuit until March 21, 2014. Federal law governs the accrual of § 1983 claims, *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995), and civil rights actions brought pursuant to § 1983 in Colorado are

subjected to the two-year statute of limitations set forth in Colo. Rev. Stat. § 13-80-102. *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993).

While the Second Amended Complaint is not altogether clear as to which of Plaintiff's actions caused what alleged retaliatory conduct, the court interprets Mr. Daniel's *pro se* Second Amended Complaint liberally. The factual allegations as set forth in the Second Amended Complaint do not suggest that Plaintiff avers Defendant Steiner altered his job duties in retaliation for his having filed the habeas corpus petition. She hired him in the Housekeeping Department after he had already filed that petition, and Plaintiff does not allege that Steiner knew of the petition or his use of the Law Library when she changed his job duties. [#22]. Instead, Plaintiff claims that Defendant Steiner "fired [him] from his housekeeping position in retaliation for attending the law library." [#22 at 10]. Plaintiff avers that the alleged retaliation arising from his use of the law library did not occur until March 30, 2012, when Defendant Valdez summoned Plaintiff to the Housekeeping Department's office and Defendant Steiner fired him "without warning." [#22 at 10]. This action was filed within two years of the date of retaliation as alleged by the Second Amended Complaint, and accordingly, this court declines to dismiss this action as time-barred.

### B. Personal Participation

As a second matter, Defendants argue that Plaintiff fails to allege their personal participation in the alleged constitutional violations. "A defendant cannot be liable under § 1983 unless personally involved in the deprivation." *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citation omitted). The complaint must allege an affirmative link between the alleged constitutional violation and the specific individual's participation in that

9

violation. *Stidham v. Peace Officer Standards and Training,* 265 F.3d 1144, 1156-57 (10th Cir. 2001). In addition, prison officials cannot be held liable under a theory of *respondeat superior. See Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677)). To succeed in a § 1983 suit against a government official for conduct that arises out of his supervisory responsibilities, a plaintiff must allege and demonstrate that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199.

This court agrees that Plaintiff has failed to allege the requisite personal participation as to many of Defendants. The Second Amended Complaint asserts no allegations as to Defendants Richards or Raemisch. Defendants Plough, Clements, and Hickenlooper appear in the pleading only as recipients of letters from Plaintiff, and Defendant Hamilton merely authored a letter to Plaintiff on Defendant Plough's behalf. [#22 at 12]. *See Davis v. Arkansas Valley Corr. Facility*, 99 F. App'x. 838, 843 (10th Cir. 2004) (holding defendant warden was not implicated under § 1983 merely because plaintiff copied him on correspondence outlining complaints about medical care). The only allegation asserted against Defendant Valdez, that he and Steiner "met to determine just how they were going to go about firing plaintiff," and against Defendants Hartbauer, Thompson, and Hartley, that they "met to conjure up the plaintiff's punishment," are conclusory in nature and not supported by any specific facts. *See* [#22 at 10]. Similarly, the allegations against Defendants Gacnik and Hall consist of them receiving a message from Defendant Burford with instruction "to ensure that

10

plaintiff [gets] thirty days in the kitchen and thirty days on pots and pans," and telling Plaintiff that he could not quit the kitchen job. [#22 at 11]. Finally, as to Defendant Russell, she simply instructed Plaintiff not to contact a named Defendant following the initiation of this lawsuit. I find the requisite personal participation is lacking as to these Defendants. *See Robbins,* 519 F.3d 1242, 1247 ("The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."). Accordingly, this court RECOMMENDS dismissing this action against Defendants Richards, Raemisch, Plough, Clements, Hickenlooper, Hamilton, Valdez, Hartbauer, Thompson, Hartley, Gacnik, and Hall for lack of personal participation.

By comparison, Plaintiff alleges that Defendant Steiner fired him from his housekeeping position, Defendant Burford "disparaged," "threatened," and "verbally assaulted" him, and Defendant Scavarda "unlawfully arrested" him. [#22 at 11]. Accordingly, I will examine Plaintiff's First Amendment Claim as to these Defendants only.

### C. Access to the Courts

A prisoner's right to access the courts is protected by the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). To state a violation of this right, Plaintiff must demonstrate an actual injury that hindered his efforts to pursue a legal claim. *See, e.g., Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996). The injury requirement is satisfied if Plaintiff is precluded from a "reasonably adequate opportunity to file nonfrivolous legal claims challenging [ ] convictions or conditions of confinement." *Lewis v. Casey*, 518 U.S. 343, 354-56 (1996).

Here, there is no indication that Defendants Steiner, Burford, or Scavarda prevented Mr. Daniel from filing any claims. The Second Amended Complaint does not allege that Plaintiff was unable to file the amended habeas corpus petition; indeed, Plaintiff visited the Law Library as originally planned. And Plaintiff does not identify another lawsuit he sought to file but for the interference of Defendants. Even read liberally, the pleading simply does not include any factual allegations to support a claim that Defendants precluded Plaintiff from accessing the courts.

### D. Retaliation

As noted above, Mr. Daniel alleges that the following retaliatory conduct occurred as a result of his use of the Law Library: Defendant Steiner fired him from his housekeeping position; Defendant Burford "disparaged," "threatened," and "verbally assaulted" him; and Defendant Scavarda "unlawfully arrested" him. [#22 at 11]. "[Prison] officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights…even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). A retaliation claim requires a plaintiff to show: (1) he was engaged in constitutionally protected activity; (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct. *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic*, 582 F.3d 1155, 1165 (10th Cir. 2009). "[P]laintiff must prove that but for the retaliatory motive, the incidents to which he refers…would not have taken place." *Peterson*, 149 F.3d at 1144.

With respect to the first factor, while prisoners have a right to access the courts, they do not have "an abstract, freestanding right to a law library or legal assistance." *Smith v. Bruce*, 91 F. App'x 100, 102 (10th Cir. 2004) (quoting *Lewis,* 518 U.S. at 351). Even if Plaintiff were to show that he was engaged in a constitutionally-protected activity, he has not demonstrated that Defendants Steiner, Burford, and Scavarda caused him injury that would discourage a reasonable person from continuing to access the Law Library. Plaintiff does not allege that he altered his use of the Law Library in any sense following the alleged retaliatory conduct. Additionally, the Second Amended Complaint does not establish that Defendant Steiner, for example, fired Plaintiff for using the Law Library. Plaintiff, in recounting his termination, does not allege that Defendant Steiner knew about either the habeas corpus petition or his trips to the Law Library. According to the Second Amended Complaint, Defendant Steiner knew only that Plaintiff failed to fulfill his new duties the very week they were assigned. And, Plaintiff was fired more than two months after that first day in mid-January when he visited the Law Library before finishing the bathroom/shower porter tasks.

Mr. Daniel has failed to allege specific facts showing retaliation because of the exercise of a constitutional right, that Defendants' actions "chilled" his activity, or that he was fired and subjected to the alleged abuse as a result of visiting the Law Library. *See Thomas v. Saffle,* 172 F.3d 63, 2 (10th Cir. 1999) ("an inmate may not base a retaliation claim on conjecture…[but] must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.").

### E. Conspiracy

To the extent Mr. Daniel alleges Defendant Steiner "conspired with the other named defendants to remove [his right to access the courts] by retaliating and punishing [him] for going to the Four Mile Law Library" [#22 at 8], Plaintiff must plead a "sufficient factual basis to support the existence of the elements of agreement and concerted action." *Aniniba v. City of Aurora*, 994 F. Supp. 1293, 1298 (D. Colo. 1998) (citations omitted). Conclusory allegations are insufficient to support a conspiracy claim. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).

Plaintiff does not allege that Defendants had a "meeting of minds" or otherwise agreed to deprive him of a constitutional right. *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990). Furthermore, this court finds that Plaintiff has not stated a constitutional violation. *See id.* ("[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient."). Accordingly, Plaintiff's claim for conspiracy, to the extent he asserts one, should be dismissed.

### III. Qualified Immunity

Defendants argue they are entitled to qualified immunity as to the one claim for violation of Plaintiff's First Amendment rights. The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted). Qualified immunity

is an affirmative defense to § 1983 liability. *See Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). Once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255). In light of my finding that Plaintiff has not pleaded a cognizable constitutional violation, this court does not address the second prong of the qualified immunity analysis but concludes that Defendants, as sued in their individual capacities, are entitled to qualified immunity.

## IV.     Defendant Lieutenant Mason

As recounted above, when the court accepted Plaintiff's Second Amended Complaint for filing, it also required that Mr. Daniel file on or before February 25, 2015, proof of service on all named defendants, including Lieutenant Mason. [#23 at 1, 3]. In that Order, the court recounted how it originally required Mr. Daniel to file proof of service of the First Amended Complaint on or before September 30, 2014. [*Id.* at 2; #14]. Instead, Mr. Daniel filed a Second Amended Complaint. [#22]. In its October 28 Order, the court clearly informed Mr. Daniel that a potential consequence of failing to properly serve would be dismissal of his action. [#23 at 3].

The undersigned Magistrate Judge then gave Plaintiff yet another opportunity to properly serve Lieutenant Mason by issuing and then discharging an Order to Show Cause. [#26, #28]. In its Order discharging the latest Order to Show Cause, this court directed Plaintiff to file proof of service no later than April 3, 2015. [#29]. Proof of Service of Lieutenant Mason was returned as unexecuted. [#46]. That filing indicated

that Lieutenant Mason was no longer employed by the Colorado Department of Corrections, but might be in Texas. [*Id.*] No other Proof of Service with respect to Lieutenant Mason has been filed.

The court set a Scheduling Conference by Order dated April 17, 2015 for May 29, 2015. [#50]. Plaintiff did not participate in the preparation of the proposed Scheduling Order. [#57]. Plaintiff did not appear for the Scheduling Conference. [#59]. Mr. Daniel has failed to contact the court with respect to either the Scheduling Conference, or any other matter since filing the Proofs of Service on April 6, 2015.

Based on the record before it, this court finds that Lieutenant Mason has not been properly served in this matter, as required by the multiple orders of this court or Rule 4(m) of the Federal Rules of Civil Procedure. Plaintiff has been specifically warned, on repeated occasions, that a failure to properly serve or a failure to comply with this court's orders regarding service might result in dismissal. *See, e.g.,* [#26]. Nevertheless, Plaintiff still has not filed any proof that Lieutenant Mason has been properly served. As a result, this court respectfully RECOMMENDS that Lieutenant Mason be DISMISSED from this action for lack of proper service and failure to prosecute pursuant to D.C.COLO.LCivR 41.1. *See e.g., Boyd v. Tkach*, Civil Action No. 99-cv-2431-ZLW-CBS, 2007 WL 1192044 (D. Colo. April 19, 2007).

## CONCLUSION

For the forgoing reasons, I respectfully **RECOMMEND** that:

(1)  The Motion to Dismiss [#51] be **GRANTED**;

(2)  Defendant Lieutenant Mason be **DISMISSED** pursuant to D.C.COLO.LCivR 41.1 for Plaintiff's failure to properly serve him in

    compliance with Rule 4(m) of the Federal Rules of Civil Procedure, failure to comply with this court's repeated orders, and for failure to prosecute; and

(3) The Second Amended Complaint be **DISMISSED** in its entirety.[3]

DATED: November 3, 2015          BY THE COURT:

                      s/Nina Y. Wang
                      United States Magistrate Judge

---

[3] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego,* 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).